1 Laurence M. Rosen (SBN 219683)
2 **THE ROSEN LAW FIRM, P.A.**
355 South Grand Avenue, Suite 2450
3 Los Angeles, CA 90071
4 Telephone: (213) 785-2610
Facsimile: (213) 226-4684
5 Email: lrosen@rosenlegal.com

6
*Counsel for Plaintiff*
7

8 UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
9

| | |
|---|---|
| 10  CARONE COBDEN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>WRAP TECHNOLOGIES, INC., DAVID NORRIS, JAMES A. BARNES, and THOMAS SMITH,<br><br>Defendants. | No.<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br><u>CLASS ACTION</u><br><br>(DEMAND FOR JURY TRIAL) |

20  Plaintiff Carone Cobden ("Plaintiff"), individually and on behalf of all other
21 persons similarly situated, by Plaintiff's undersigned attorneys, alleges the
22 following based upon personal knowledge as to Plaintiff and Plaintiff's own acts,
23 and upon information and belief as to all other matters based on the investigation
24 conducted by and through Plaintiff's attorneys, which included, among other things,
25 a review of U.S. Securities and Exchange Commission ("SEC") filings by Wrap
26 Technologies, Inc. ("Wrap" or the "Company"), as well as media and analyst
27 reports about the Company and Company press releases. Plaintiff believes that
28

substantial additional evidentiary support will exist for the allegations set forth herein.

## NATURE OF THE ACTION

1. Plaintiff brings this securities class action on behalf of persons who purchased the securities of Wrap between July 31, 2020 and September 23, 2020, inclusive (the "Class Period"). Plaintiff seeks to recover compensable damages caused by Defendants' violations of the federal securities laws under the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act (15 U.S.C. §78aa).

4. This Court has jurisdiction over each defendant named herein because each defendant has sufficient minimum contacts with this judicial district so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

5. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as the alleged misstatements entered and the subsequent damages took place in this judicial district.

6. In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of a national securities exchange. Defendants disseminated the statements alleged to be false and

1

misleading herein into this district, and Defendants solicited purchasers of Wrap securities in this district.

## PARTIES

7. Plaintiff, as set forth in the accompanying Certification, purchased the Company's securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosure.

8. Defendant Wrap purports to develop security products for law enforcement and security personnel, including the BolaWrap 100, a hand-held remote restraint device that discharges an eight-foot bola style Kevlar tether to entangle a subject at a range of 10-25 feet. Defendant Wrap is incorporated in Delaware and maintains its principal executive offices at 1817 W 4th Street, Tempe, Arizona 85281. The Company's shares are listed on NASDAQ under the ticker symbol "WRTC."

9. Defendant David Norris ("Norris") served as the Chief Executive Officer and Director of the Company throughout the Class Period.

10. Defendant James A. Barnes ("Barnes") served as the Chief Financial Officer, Secretary, and Treasurer of the Company throughout the Class Period.

11. Defendant Thomas Smith ("Smith") served as the Company's President throughout the Class Period.

12. Defendants Norris and Barnes are collectively referred to herein as the "Individual Defendants."

13. Each of the Individual Defendants:

(a) directly participated in the management of the Company;

(b) was directly involved in the day-to-day operations of the Company at the highest levels;

(c) was privy to confidential proprietary information concerning the Company and its business and operations;

(d) was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

(e) was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

(f) was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

(g) approved or ratified these statements in violation of the federal securities laws.

14. The Company is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

15. The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to the Company under *respondeat superior* and agency principles.

16. The Company and the Individual Defendants are referred to herein, collectively, as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

17. On December 3, 2019, Wrap announced that the Los Angeles Police Department ("LAPD") had decided to train its officers on the BolaWrap and employ 200 devices in the field for a trial, pilot program.

### Materially False and Misleading Statements

18. On July 31, 2020, Wrap filed its quarterly report on Form 10-Q with the SEC for the quarter ended June 30, 2020 (the "2Q20 10-Q"). The 2Q20 10-Q

3
CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

was signed by Defendants Barnes. Attached to the 2Q20 10-Q were certifications pursuant to the Sarbanes-Oxley Act of 2000 signed by Defendants Norris and Barnes attesting to the accuracy of the financial statements and the disclosure of all fraud.

19. On August 2, 2020, the Company held a conference call to discuss the second quarter 2020 results. During the call, Defendant Norris stated that the "LAPD trained about 1,100 officers and they do have 200 devices in the field 24 hours a day with those 1,100 officers."

20. During the call, Defendant Smith stated the following concerning the LAPD trial:

> There is one large department within the U.S. that we've been undergoing trials with and that is the Los Angeles Police Department.
>
> When this program first started, we initially thought that the trial period would last approximately 90 days. However, with optional extensions – periods built in the agreement, some of which have already been exercised. There was the potential for this trial to last for upwards of one year. Bear in mind, those terms were discussed before the Coronavirus began to impact the U.S. in earnest and therefore, they are subject to change.
>
> The current extension is set to end in August, but it is possible and most likely we will see another extension exercised. I am fully aware that humans are risk adverse beings. And so, there is a natural tendency to fill the void left by uncertainty with negative speculations. So, let me try to put some of those at ease. Extensions are a very good thing.
>
> If LAPD didn't like the product, they wouldn't be asking for extensions, and we have continued to receive positive feedback from them.
>
> To conduct this trial, LAPD had to train 1,100 officers on the BolaWrap. They committed approximately 8,800 hours to training which is equivalent to four man years that's a massive investment on their part. The opportunity cost of pulling that many officers out of rotation and into training should not be discounted. They've committed substantial resources towards this project.

4
CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

> So rest assured they are spending the time that they believe is adequate to give the BolaWrap an honest and thorough evaluation. Regardless of how this trial ultimately goes, it's clear from the domestic and international reception so far that the BolaWrap is gaining traction.

21. On September 3, 2020, the Company presented at the LD 500 Virtual Conference. During the presentation, the Defendant Smith stated, in relevant part, the following:

> We're used in over 210 agencies around the United States, the largest being so far the Los Angeles Police Department, or LAPD. They've trained 1,100 officers and have over 200 devices out on the street. They are about halfway through their field trial, they'll be wrapping that up in early February of next year. And so far they've had great feedback from the officers and their uses so far.

22. On September 9, 2020, the Company presented at the 9th Annual Gateway Conference. During the presentation, Defendant Smith made the same statement as in ¶21.

23. The statements referenced in ¶¶18-22 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operational and financial results, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) the Company had concealed the results of the LAPD BolaWrap pilot program, which demonstrated that the BolaWrap was ineffective, expensive, and sparingly used in the field; and (2) as a result, Defendants' public statements were materially false and/or misleading at all relevant times.

## THE TRUTH EMERGES

38. On September 23, 2020, while the market was open, White Diamond Research published a report entitled "Wrap Technologies: Disastrous LAPD BolaWrap Pilot Program Results, No Evidence These Have Been Communicated To Investors" alleging, among other things, that the Company's trial pilot program

5
CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

with the LAPD was a disaster, and that the Company had not disclosed the results to investors. The report stated, in relevant part:

> ***The LAPD BolaWrap Pilot Program Results Have Been Revealed – And It Is Ugly***
>
> The LAPD and the respective BolaWrap trials have been a common theme in WRTC presentations since December 2019. The company's management has seemingly failed to disclose, however, a key milestone failure from an LAPD report filed after the six-month trial program finished on 8/25/20. We found this report through our continued research on the company. There isn't any evidence that company executives have referenced or mentioned the LAPD report. This is the only comprehensive in-field study that has been done on the BolaWrap. So why haven't the results been released to investors? It's bad news.
>
> Over a six-month period, 200 BolaWrap devices in the hands of 1,100 LAPD officers in the field were only used nine times, and only worked once. On an annualized basis, this comes to each BolaWrap is only used 0.09 times per year. Or, once every 11 years. At least 191 BolaWraps weren't used at all in the pilot program, they were just sitting there collecting dust. We believe this was about the worst result that could've happened from the program. The only way it could've been worse, is if the BolaWrap didn't work at all.
>
> This was an important pilot program, that will be looked at by potential large police departments. The following statements by WRTC management illustrate how much time, expense, and training was put into the LAPD pilot program.
>
> \*   \*   \*
>
> ***An Analysis Of The LAPD BolaWrap Pilot Trial Results***
>
> The LAPD BolaWrap pilot program results can be found here. It's dated 8/25/20 from the Chief of Police to the Board of Police Commissioners. The program reviewed was from 2/5/20 until 8/10/20. It states:
>
> the BolaWrap has been utilized nine times. Due to an insufficient sample size, an additional 180 days is needed in order to evaluate the effectiveness of the device.

The nine incidents of utilization are described in the report. It says that the number of incidents where the device was effective was six times. But looking at it closely, the BolaWrap did what it's supposed to do, as shown in the WRTC demonstration videos, only once.

Analyzing each of the incidents:

1. A naked man was running in and out of traffic. The BolaWrap was deployed, it hit him in the legs but didn't wrap. This made the suspect take a fighting stance. An officer deployed his baton on the suspect, and he was taken into custody without further incident. This incident is marked as "effective" but it really wasn't. It didn't wrap around and disable the suspect but in fact made him more hostile as he took a fighting stance. The officer had to use force with his baton, which could've been used without the BolaWrap and likely end up with the same result.

2. A call came in to report a male with a mental illness. The BolaWrap wrapped around the suspect but he was wearing a "puffy jacket" and he immediately pulled his arms free. This incident was marked "ineffective".

3. A call came in to report an ADW (Assault with a Deadly Weapon) suspect. Officers observed the suspect with a pipe in his hands. The officers told the suspect to drop it, but he wouldn't comply. First, the 40mm Less-Lethal Launcher was used to strike the suspect but had no effect. Then the BolaWrap was deployed at the suspect's legs. It didn't wrap around his legs, but the suspect immediately complied afterwards. This incident was marked "effective" because no additional force was needed after the BolaWrap was deployed. But again, it wasn't really effective because it didn't do what it's supposed to do, which is wrap around a suspect.

4. A call came in to report an ADW suspect with a knife. The suspect failed to comply with officers' commands. The BolaWrap was deployed at the suspect's legs and successfully wrapped around him, stopping his advancement. This was the only time out of these nine utilizations that the BolaWrap successfully "wrapped" a suspect.

5. Officers were in pursuit of a suspect. The BolaWrap was shot at the suspect's legs. Again, it didn't wrap around the suspect's legs, but it startled the suspect and he was taken into custody. This was marked

7

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

"effective", but in our opinion it wasn't. Again, the BolaWrap didn't work like it's supposed to - it didn't wrap.

6. A man was disturbing the peace. The BolaWrap was deployed at the suspect's legs. It hit the suspect's legs but didn't wrap around it completely, and he stepped out of the tether. The officers then utilized a team takedown to take the suspect into custody. This was marked "effective" as it stopped the suspect from walking away. This is more effective than the other times, because he had to actually step out of the tether, which slowed him down. But still, it didn't wrap completely around his legs.

7. A call came in of an arson suspect. The BolaWrap was deployed at the suspect's legs, it hit him in the knee but didn't wrap. He was stunned by the impact, and was taken into custody without further incident. Because there wasn't further incident, it was marked effective, but in reality it was another fail.

8. A call came in of a family dispute. The suspect was armed with a large stick. The BolaWrap was shot at his arms, but didn't wrap, possibly because it hit a fence behind the suspect. The officers then utilized a 40mm Less Lethal Launcher and the suspect was taken into custody. This was marked as ineffective because it didn't wrap and another tool was necessary to take the suspect into custody.

9. A suspect refused to comply with officers' orders and the BolaWrap was deployed. It missed the suspect. Therefore, it was deemed ineffective.

44. On this news, securities of Wrap fell $2.07 per share, or 25.43% to close at $6.07 per share on September 23, 2020, damaging investors.

45. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

**PLAINTIFF'S CLASS ACTION ALLEGATIONS**

46. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons other

8

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

than defendants who purchased publicly traded Wrap securities on the NASDAQ during the Class Period, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of Wrap and its subsidiaries, members of the Individual Defendants' immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

47. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Wrap securities were actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds, if not thousands of members in the proposed Class.

48. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

49. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

50. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

a) whether the Exchange Act was violated by Defendants' acts as alleged herein;

b) whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the financial condition and business of the Company;

c) whether Defendants' public statements to the investing public during the Class Period omitted material facts necessary to make the statements

made, in light of the circumstances under which they were made, not misleading;

d) whether the Defendants caused the Company to issue false and misleading filings during the Class Period;

e) whether Defendants acted knowingly or recklessly in issuing false filings;

f) whether the prices of Wrap securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

g) whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

51. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

52. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

a) Wrap shares met the requirements for listing, and were listed and actively traded on the NASDAQ, an efficient market;

b) As a public issuer, the Company filed periodic public reports;

c) Wrap regularly communicated with public investors via established market communication mechanisms, including through the regular dissemination of press releases via major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services;

d) Wrap's securities were liquid and traded with moderate to heavy volume during the Class Period; and

e) The Company was followed by a number of securities analysts employed by major brokerage firms who wrote reports that were widely distributed and publicly available.

53. Based on the foregoing, the market for Wrap securities promptly digested current information regarding the Company from all publicly available sources and reflected such information in the prices of the securities, and Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

54. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information as detailed above.

## COUNT I
### For Violations of Section 10(b) And Rule 10b-5 Promulgated Thereunder Against All Defendants

55. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

56. This Count is asserted against Defendants is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

57. During the Class Period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order

to make the statements made, in light of the circumstances under which they were made, not misleading.

58. Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

- employed devices, schemes and artifices to defraud;
- made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or
- engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of Wrap securities during the Class Period.

59. Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These Defendants by virtue of their receipt of information reflecting the true facts of the Company, their control over, and/or receipt and/or modification of Wrap's allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning the Company, participated in the fraudulent scheme alleged herein.

60. Individual Defendants, who are or were the senior officers and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with

reckless disregard for the truth when they failed to ascertan and disclose the true facts in the statements made by them or other Wrap personnel to members of the investing public, including Plaintiff and the Class.

61. As a result of the foregoing, the market price of Wrap securities was artificially inflated during the Class Period. In ignorance of the falsity of Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of Wrap securities during the Class Period in purchasing Wrap securities at prices that were artificially inflated as a result of Defendants' false and misleading statements.

62. Had Plaintiff and the other members of the Class been aware that the market price of Wrap's securities had been artificially and falsely inflated by Defendants' misleading statements and by the material adverse information which Defendants did not disclose, they would not have purchased Wrap's securities at the artificially inflated prices that they did, or at all.

63. As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

64. By reason of the foregoing, Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchase of Wrap's securities during the Class Period.

## COUNT II
### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

65. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

66. During the Class Period, the Individual Defendants participated in the operation and management of the Company, and conducted and participated, directly and indirectly, in the conduct of Wrap's business affairs. Because of their

senior positions, they knew the adverse non-public information about the Company's false financial statements.

67. As officers of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Wrap's financial condition and results of operations, and to correct promptly any public statements issued by the Company which had become materially false or misleading.

68. Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Wrap disseminated in the marketplace during the Class Period concerning the Company's results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause the Company to engage in the wrongful acts complained of herein. The Individual Defendants, therefore, were "controlling persons" of the Company within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Wrap securities.

69. By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by the Company

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, on behalf of himself and the Class, prays for judgment and relief as follows:

(a) declaring this action to be a proper class action, designating plaintiff as Lead Plaintiff and certifying plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and designating plaintiff's counsel as Lead Counsel;

(b) awarding damages in favor of plaintiff and the other Class members against all defendants, jointly and severally, together with interest thereon;

(c) awarding plaintiff and the Class reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d) awarding plaintiff and other members of the Class such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: September 23, 2020

**THE ROSEN LAW FIRM, P.A.**
/s/Laurence M. Rosen
Laurence M. Rosen (SBN 219683)
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

*Counsel for Plaintiff*

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS